I would like to start with the Harrington v. Richter case, which was cited by counsel in the recent letter memorandum, which was decided on January 19th of this year. Richter involves an incompetency of counsel issue. There's no question but what the claim was adjudicated. The California Supreme Court, in the petition for writ of habeas corpus, responded the same way they did in our case, with a one sentence, very summary, the petition's denied. The court in Richter said there were two ramifications from the feature that there was no reasoning or analysis expressed in the Supreme Court's ruling. First, in terms of whether that decision by the California Supreme Court was on the merits or on some other basis, the court said that absent a, quote, indication to the contrary, that that decision was on the merits, not on the merits. It was on a procedural or other independent state ground. The second ramification was that even though once, now that there's been an adjudication on the merits, even though there's no reasoning or analysis expressed, that the paradigm of 2254 D1, dealing with decisions that are contrary to or an unreasonable application of clearly established, federal law, still applies. And so that the enterprise for the federal court is to determine whether there is some possible basis for the decision that would be reasonable. Mr. Bondek, what's the significance of the letter that was sent on August 8, 2006, by the court administrator for the Supreme Court of California, asking about the effect of people versus Howard and is Howard retroactive, and asked the parties to address four questions, and then, you know, later on in the year, on November 15, 2006, you get the petition for writ of habeas corpus denied. What's the significance of that? Your Honor, our position is that the California Supreme Court's request for an informal response, after we filed the petition in the Supreme Court, addressed the question of whether Howard is retroactive. Those questions, there were four questions. Two of them dealt with the question of retroactivity. What's the effect is in the context of, is it retroactive? Our position is, and I believe that the Bunkley case, which is the bedrock case we're relying upon in this appeal, clearly differentiates the retroactivity problem, which only is a problem if it's new, if the law is new, and the Fiori problem, which is totally separate, which obtains when the case in question is a clarification. Your position is that this is really a Fiori? Yes. And therefore, this was an interpretation, and they're saying that the statute is broader and covers other things, and therefore, your client may have been convicted of something that wasn't inherently a crime of libel. It wasn't inherently dangerous now and wasn't inherently dangerous when his decision became final and wasn't inherently dangerous. And I guess the question that Judge Bennett is getting at and that troubles me is if this is really a question of is it a clarification or not, why did they ask about retroactivity? Well, I think that they – I mean, that's the core problem we have. Our position is that they assumed that it was – that all this assumed that it was new and that whether it's new has never been addressed. Why do we have to presume that they addressed it post-Harrington? Well, because – okay. Harrington assumes that there was a claim that was adjudicated on the merits. It goes to the question of how the case was adjudicated. Our issue is whether it was adjudicated at all, whether any of these courts in the State system ever addressed the question whether Howard was a clarification or whether Howard was a new rule. And our position is the question of whether the court adjudicated and how the court adjudicated are two entirely different questions and are subject to two different regimes. The question of how it was decided is the 2254d1 Richter regime. The question of whether it was decided is the Fiori-Bunkley regime. True, but I think especially post-Harrington, we're supposed to look even more deferentially at what the State courts do. And here, as Judge Bennett points out, you have the California Supreme Court actually asking the question, and the party responds, and then relief is denied. So why shouldn't we presume that they were actually deciding the question on habeas or Federal habeas review? The Supreme Court of California never asked whether Howard was new or a clarification. They never asked that. The response to the request for an informal response never addressed it. It assumed that it was new, but never at any time in the whole, it's been six years now, history of this case has anybody ever addressed is Howard new or not. And I submit that one will search this extensive record in vain to find one single instance where the Attorney General has so much as suggested any case in the California Supreme Court that by any stretch of the imagination would support the idea that Howard is anything but what Howard on its very face says, and that is that it was establishing what, that it was declaring well-established law. So this issue has never been addressed. And again, I come back to Bunkley, which is the bedrock of our position. And in Bunkley, as we know, the Supreme Court of the United States held that the Florida Supreme Court had not adequately addressed whether the L.B. case, which is what Bunkley was relying on in terms of whether his knife was a dangerous weapon, a difference of five years to life in prison. The decision of the Florida Supreme Court that the United States Supreme Court was reviewing, which is reported in 833 Southern Report, a second. Just take me a second. I'd like to read what the Florida Supreme Court said with regard to Fiore. It says, jurisprudential, jurisprudential, page 744. Jurisprudential appeals are applied retroactively. Evolutionary refinements are not applied retroactively. We add that as opposed to changes in the law, an entirely separate body of precedent i.e., clarifications in the law, has no application under Florida law in the context of retroactivity. Then Head Note 12 says, the United States Supreme Court, in addressing a decision rendered under Pennsylvania law, pointed out that certain decisions are not subject to a retroactivity analysis, referring to Fiore. And then it quotes from the Supreme Court. The Pennsylvania Supreme Court's reply specifies that the interpretation of the statute set out in Scarpone merely clarified the statute and was the law of Pennsylvania. Oops. Your time is just about expired. I'm almost to the very end of this quote. Pennsylvania as properly interpreted at the time of Fiore's conviction, because Scarpone was not new law, this case presents no issue of retroactivity. Then the rest of the paragraph under Note 12 is, Fiore is inapplicable to the present case. If Fiore is inapplicable, then implicitly that says that it's new law. In our case, there's no reference to Fiore anywhere. There's no reference in the superior court, in the court of appeal, or in the Supreme Court. That kind of cuts both ways, doesn't it? I don't think it cuts both ways, Your Honor. I mean, the fact that it isn't mentioned, according to the ---- I mean, if the Supreme Court of Florida mentions Fiore and says it doesn't apply, then if a court doesn't mention Fiore at all, as far as I'm concerned, that's an 8-4 Fiore case. Thank you. I think we understand your argument. Thank you, Your Honor. May it please the Court. Lisa Ashley Ott for Respondent. The key problem with Appellant's argument is that it requires us to assume that the California courts ignored his pleadings in which he argued that Howard was a clarification and not a change of the law, and also we have to assume that the California courts didn't understand and didn't apply established Supreme Court precedent. Fiore point was argued by Appellant throughout the California courts. The California courts, in finding and addressing retroactivity, part and parcel of that decision was the first step. They first had to find that Howard was a change in the law and not simply a clarification of the law. Unless they made that first step under U.S. Supreme Court authority, they couldn't get to the retroactivity issue. It's part and parcel of the retroactivity finding. But was the statute the same throughout the period? No. The statute changed well before the events in this case. There was a prior case finding that this reckless fleeing from the police was inherently dangerous, and then the statute was amended to the broader. It got broader. And then there was another California court of appeal case finding that even as amended, the statute still was inherently dangerous. And then there was the. Was that reviewed by the Supreme Court? I think there was a petition for review that was just denied. The California Supreme Court never looked at it on the merits. But the established law, at least at the court of appeal level at the time of this case, was that the activity here was inherently dangerous. And then we have Howard, which, of course, changed the law on this issue. And, in fact, there was a dissent in Howard. It wasn't just a clarification of existing law. There was a dissent, a very powerful dissent by Justice Baxter, which said, you know, I'm applying California Supreme Court precedent, and I find that it's the opposite conclusion of what the majority found. So Howard was a change in the law. And the California. Does this affect a lot of cases? You know, I have looked. I've done searches to see Howard and retroactivity, and I have not come up with any other cases that this, that are presenting this issue or that the courts are deciding this issue. So. Even the only reason I ask is that if it, if it were affecting a lot of cases, then we could certify it, just say, well, is it retroactive or not, and they can give us a clear answer. I think you already have a clear answer. The California Supreme Court asked for a briefing on the effect of Howard, which to me means the effect of Howard, is it a clarification of the law, is it a change in the law, and on whether or not. Do you understand that that's subsumed in the question, that they were also asking whether or not it was just a clarification, whether or not it was a clarification, in which case it would apply to, to cases that were decided under it? My understanding of the California Supreme Court's letter, they first asked what the effect of Howard was. That was the first question. And the second question was whether or not Howard was retroactive. So they at least, the first question, the effect of Howard, left open the possibility that we could argue it was a change or a clarification. And the second question kind of assumed that it was a change in the law. Is it retroactive or not? So in denying, even in issuing a silent denial with full briefing on this issue, a letter specifically asking us to address the issue, we can only read from that that the California Supreme Court has decided that, that Howard is a change in the law, they're not going to apply it retroactively, and they decided to issue a silent denial. That's an indication they don't think this warrants reasoned opinion. They've signaled to us that, you know, this isn't going to come up a lot, I haven't seen it come up again. And they don't want to issue a long opinion, a reasoned opinion in this case. And so as the district court found, the California Supreme Court's denial of the habeas petition here did reflect a determination that Howard was a change in the law. And we have to presume that this decision was made in light of U.S. Supreme Court authority. It was a change, but when you say change in the law, you mean a change in the Supreme Court law. Well, the felony murder rule in California is only based on case law. Correct. There's no statutory basis for it. But I'm still troubled by the fact that they were interpreting a different statute than they had earlier. Well, I might have been. A broader statute. I might have misled the Court. The original decision interpreting the statute was a court of appeal decision. The California Supreme Court had not interpreted the statute. The California Supreme Court had not. I understand that, but I was the statute amended to cover more conduct after those court of appeal decisions? There was a court of appeal decision interpreting the first statute, the original statute. Then the statute was amended, and there was a court of appeal decision interpreting the amended statute. So both before and after the amendment, there were court of appeal decisions saying that the activity was inherently dangerous. And then we have Howard, which overruled – it really only overruled the second court of appeal decision, because it was really only dealing with the broader as amended statute. So we have California court of appeal authority both before and after the amendment saying that the statute is inherently dangerous. We don't have any Supreme Court, California Supreme Court authority before or after. So I think that it really comes down to if you accept Appellant's argument, you have to assume that the California Supreme Court didn't understand U.S. Supreme Court authority, and we know that we can't do that. So you're acknowledging that they could have held that it was a – that there is an argument that it was a clarification and that the – because the – they were interpreting a statute that was broader, and when they overruled the court of appeal decision that was still applying the old law, they were clarifying that the new statute is broader. I think that the change in the statute, the amendment of the statute to make it broader, is really a red herring here, because the fact that the old statute was the old statute and was interpreted a certain way doesn't really mean anything. It has no real relevance to what happened here. Right. It's as though it's a completely separate statute that's being interpreted. The fact that it was changed in the past is really a red herring in this case. Unless the Court has any other questions, I'll submit on the briefs. Thank you. Thank you. Are there any questions of the attorney? No. Thank you. The case just argued is submitted for decision.
judges: Bennett, Schroeder, Thomas